# UNITED STATES DISTRICT COURT
for the
Middle District of Tennessee

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| HANK WISE | ) | Case No. 20-mj-1146 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 12, 2017__ in the county of __Rutherford__ in the __Middle__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code Sections 2261A | Stalking by mail |

This criminal complaint is based on these facts:

See Attached statement in support of complaint

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Postal Inspector Nathaniel B. Sims
*Printed name and title*

Sworn to me remotely by telephone, in compliance with Fed. R. Crim. P. 4.1.

Date: 11/06/2020

_____
*Judge's signature*

City and state: Nashville, Tennessee

Hon. Barbara D. Holmes
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nathaniel B. Sims, having been duly sworn, hereby depose and swear to the following:

1. I, Nathaniel B. Sims, am a United States Postal Inspector currently assigned to the Middle District of Tennessee. I have been so employed since 2007. As a United States Postal Inspector I am familiar with federal statutes concerning illegal use of the United States Postal Service such as Title 18, United States Code Section 2261A(2)(B) which makes it unlawful for an individual to, with the intent to harass or intimidate another person uses the mail to engage in a course of conduct that causes, attempts to cause, or would reasonably be expected to cause substantial emotional distress to another person.

2. The facts contained in this affidavit are based on first-hand knowledge or information learned during this investigation from law enforcement sources or from witnesses. This affidavit does not contain each and every detail known by your affiant regarding this investigation. Instead, this affidavit provides information necessary to establish probable cause to arrest Hank WISE for a violation of 18 U.S.C. § 2261A(2)(B). Except where indicated, all statements referenced herein are set forth in substance and in part, rather than verbatim.

3. On or about April 2, 2009, Hank WISE went to the Buck Wild Saloon in Nashville, Tennessee and shot and killed B.G. in front of the victim's wife, N.G. WISE was an acquaintance of B.G. and N.G. through "karaoke nights" at Buck Wild (where B.G. was routinely the "karaoke host" and where N.G. regularly accompanied her husband) but did not have a prior friendship or prior romantic relationship with either B.G. or N.G. at the time of the murder.

4. On April 12, 2012, WISE was convicted of the Second Degree Murder of B.G. after a bench trial in Davidson County Criminal Court Case Number 2009-C-2653. At the sentencing hearing in 2012, N.G. testified in front of Hank WISE and described how WISE's murder of her husband had a severe and detrimental impact on her life. WISE was ordered to serve 23 years in the Tennessee Department of Corrections.

5. While in prison, beginning in approximately 2011, WISE began sending unrequested letters to N.G. which lasted until 2017. The communications were also in the form of cards for holidays such as Christmas and Valentine's Day.

6. For example, in a letter with a handwritten date of "December, 2015", WISE wrote N.G.: "I still think about you every day only because I loved you so much from the first day I ever met you and that's not a past tense statement." The letter later further states that "[w]ell it's been Months since I started this letter and today is January 13, 2006, I hope you got my Charlie Brown Christmas letter"[1] and goes on to reference the fact that WISE (as the author of this communication) was at "Deberry Special Needs facility for a court date on a post conviction hearing". I have verified that, according to the Davidson County Criminal Court Clerk's Office, WISE had a court appearance on January 13, 2016 on a post-conviction petition. The letter also states: "I have to try to mend our relationship."

---

[1] I have also reviewed another letter addressed to "[N]", which is signed "Hank", and has hand-drawn "Charlie Brown" characters on it.

7. Additionally, on or about February 11, 2017, Wise sent a message to N.G. with a hand-colored picture of roses which read "Happy Valentine's Day" in print with handwritten script "[N] [2] From Hank". Accompanying this communication was a letter from WISE to N.G. stating (among other things):

> "I guess me and Butch Cassidy have this in common, he wrote '…You are a Lady, and I would do all I could for you and any of your sex that was in trouble of course, I am Foolish (which you have found out) but it is in my nature and I can't change it…'"

8. Also in this letter was a recitation by WISE of what he described as a "Criminal Chain Conspiracy" and contains the passage: "I Loved [N.G.] Long before she Sent me the 4 AM Love note on MySpace But this story is Like the story of Helen of Troy and Like Paris I have to defend [N] at ALL Cost. [sic]"

9. I have interviewed N.G. and, during that interview, she stated that she has never had any kind of romantic relationship with WISE, nor given him any indication that she wanted such a relationship with him at any time, nor did she ever send him any kind of a "Love note" at any time.

10. These communications were initially sent to N.G. via Daniel L. Graves II, an attorney in Murfreesboro, Tennessee. Graves previously represented N.G. in a wrongful death action against WISE and, as a part of the publicly filed pleadings in that action, Graves included his business address in the Certificate of Service. I submit that there is probable cause to believe that Graves' business address was potentially the only physical address WISE would have had available to him to use in an attempt to send these communications to N.G. Since N.G. changed physical addresses after the murder of her husband in 2009, it is unknown if WISE sent any communications to N.G.'s former physical address (as of 2009) at any time.

11. I have interviewed Graves and, during that interview, he stated that he notified N.G. of the first communication intended for her on about August 22, 2011, and of the second on about March 1, 2012. Given the content and timing of the communications (they were sent while WISE was in custody and awaiting trial for the murder of her husband), N.G. was extraordinarily upset when she learned of the attempts by WISE to communicate with her.

12. Graves notified the state prosecutor who had handled WISE's murder case about the communications, and was informed that the state prosecutor declined to file any new charges against WISE for these communications. When she learned of the state prosecutor's decision, N. G. asked Graves not to notify her should WISE send any subsequent communications intended for her. After 2012, Graves received the communications from WISE which are described in this affidavit but, in accordance with his client's wishes, did not share those communications with N.G. However, he did keep the original correspondence until such time as they were turned over to me as evidence in this case.

13. N.G. only learned of the additional communications intended for her – but which had been originally sent to Graves – sometime in 2019 when Graves disclosed the additional

---

[2] This complaint does not identify the victim by name and, therefore, has substituted the first initial for what appeared in the communication as the hand-written first name of the victim. Within this complaint where an initial of the victim appears within brackets, the actual name of the victim appeared in the referenced communication.

communications to her. N.G. was highly distressed when she learned of the continued attempts by WISE to communicate with her.

      14.    Based on the foregoing, I submit that there is probable cause to believe that, because of the fact that WISE murdered N.G.'s husband in front of her, that any previous interaction between N.G. and WISE had never moved past the level of occasional acquaintance (much less to the level of a prior romantic relationship), that N.G. had testified at WISE's sentencing hearing - and in WISE's presence - to how WISE's murder of her husband had devastated her, that WISE sent the above described letters intending to harass and/or intimidate N.G. by sending communications that would reasonably be expected to cause substantial emotional distress in another person (i.e. N.G.). Therefore, I submit that there is probable cause to believe that Hank WISE has violated Title 18, United States Code Section 2261A(2)(B) and would request that a warrant issue for his arrest.